United States District Court
Southern District of Texas
**ENTERED**
February 27, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SAN JUANA GUERRERO SALDANA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-159 |
| | § | |
| ANGLETON INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, San Juana Guerrero Saldana, filed suit as next friend of her minor child, whom she describes as "an autistic child who is not vocal and is therefore significantly disabled and [who] attends a special care facility in Angleton, Texas." Saldana alleges that, on two separate occasions in September 2015, her child was physically assaulted on a school bus by a school district employee. Dkt. 26. She filed suit in June 2016 against that district employee, Rachel Hernandez, and the Angleton Independent School District. Dkt. 1. Both AISD and Hernandez have filed a motion to dismiss Saldana's claims. Dkt. 16, 18.

## FACTUAL ALLEGATIONS

The live complaint is Saldana's third such pleading, entitled "Plaintiff's Second Amended Complaint". Dkt. 26. Saldana alleges that, on September 8, 2015, Hernandez was a Bus Monitor who "began hitting the minor disabled Plaintiff with a rolled-up folder," even though the minor was "not combative or aggressive in any manner at the time of [the] incident or acting in any way which necessitated restraint or justified the use

of corporal punishment, especially excessive and objectively unreasonable force and violence." Saldana further alleges that, less than a week later, Hernandez again hit the minor, but this time with a seat belt buckle "forcefully . . . three times in less than five minutes, first on his right thigh, then on his hands, then on his right leg, each blow terrifying the minor disabled Plaintiff and causing him physical and mental pain and suffering and mental anguish."

As causes of action, Saldana brings two counts under 42 U.S.C. § 1983 for violations of the minor's rights under the Fourteenth Amendment, specifically (1) his right to equal protection and (2) his right to "liberty interest in bodily integrity under the law." Saldana alleges "there was no rational basis for Defendant Hernandez's abuse of the minor disabled Plaintiff. She beat him because he was disabled and could not cry out or defend himself." Saldana alleges that Hernandez's actions were taken "in the course and scope of her employment, and due and owing to her incomplete, incompetent, deficient and insufficient training, education and supervision . . . . each time exerting excessive and objectively unreasonable force and causing the small boy physical and mental pain and suffering and mental anguish." Although AISD allegedly became aware of the incidents[1], Saldana alleges that AISD's initial investigation resulted in a "white-wash[ ] . . . and no disciplinary or corrective or re-training action whatever was taken by it regarding its Bus Monitor."

---

[1] Broadly construed, Saldana's pleading alleges that AISD was aware of the first incident with the folder, but failed to take immediate steps to stop the incident with the seat belt.

Saldana alleges AISD failed to hire competent personnel and that it further failed to adequately train, educate, supervise or control its employees with respect to nonverbal disabled students. She alleges AISD has shown a "reckless disregard for or deliberate indifference to the rights of students, such that the inadequate training or supervision represents AISD's policy." She further alleges that, "[N]o reasonably prudent employee, supervisor or officer, under same or similar circumstances, could have believed that such conduct was in any way legal or justified. Such conduct was objectively grossly abusive."

Saldana does not specifically plead that other similar incidents have occurred in the past, but she asks to conduct discovery "to ascertain the existence of other abuse incidents of a similar nature [because] Defendant AISD has videotapes that document this and probably other similar events."

As damages, Saldana seeks actual, or "at the very least nominal," damages, as well as damages for medical expenses, pain and suffering, mental anguish, loss of consortium, her own bystander mental anguish and pain and suffering, loss of quality of life, attorney's fees, and exemplary or punitive damages.

## APPLICABLE LAW

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id*.

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In other words, a complaint must provide sufficient factual allegations that, if assumed true, "raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In conducting this analysis, however, the Court does not consider legal

conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B. Section 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiffs suing public officials under § 1983 must file short and plain complaints that are factual and not conclusive. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

## C. Fourteenth Amendment Rights: Equal protection and Liberty Interest

Saldana raises two types of claims under the Fourteenth Amendment. First, she raises an equal protection claim. The equal protection clause of the Fourteenth Amendment commands that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The clause directs that all persons similarly situated should be treated

alike. *See* U.S. Const. amend. XIV; C*ity of Cleburne, Tex. v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As a general rule, equal protection claims under the Fourteenth Amendment "typically concern governmental classifications that impact groups of citizens in different ways." *Klinger v. University of So. Miss*., 612 Fed. App'x. 222, 232 (5th Cir. 2015). Although equal protection claims generally concern groups, the Supreme Court has recognized a "class-of-one" equal protection claim, which can be maintained in cases in which "an individual has 'been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment.'" *Id*. (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). It is well established that, in order to state an equal protection claim, a plaintiff must allege that "similarly situated individuals were treated differently" and "purposeful or intentional discrimination." *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998) (citing *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992); *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L.Ed. 2d 262 (1987)).

Next, "[t]he Due Process Clause of the Fourteenth Amendment confers upon an individual the right to be free of state-occasioned damage to [his] bodily integrity . . . ." *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997); *Doe v. Taylor I.S.D.*, 15 F.3d 443, 451 (5th Cir. 1994) (en banc), cert. denied sub. nom., *Lankford v. Doe*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). But the United States Supreme Court has indicated that a violation of one's substantive due process rights does not arise unless the alleged conduct is of such magnitude that it "'shocks the conscience' of federal judges." C*ollins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 1069–70, 117 L.Ed.2d

261 (1992). It is for the court to decide, prior to a case being given to a jury, whether the alleged conduct is of such an egregious nature that it "shocks the conscience" and constitutes a violation of a person's bodily integrity. 112 S.Ct. at 1069.

### D. Qualified Immunity Under Federal Law

Under federal law, public officials acting within the scope of their authority are generally shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986); *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). In conducting a qualified immunity analysis, each defendant's conduct must be examined individually. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

Although qualified immunity is an affirmative defense, a plaintiff "has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009). A plaintiff meets this burden by alleging facts showing that the defendant committed a constitutional violation and that the defendant's actions were objectively unreasonable in light of the clearly established law at the time those actions were taken. *Atteberry v. Nocono General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). To be "clearly established," the law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."

*Taylor v. Barkes*, —— U.S. ——, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015). The Fifth Circuit has taken pains to point out that the "objectively unreasonable" analysis here is not the same as the "deliberate indifference" analysis seen in the Eighth Amendment context above—"[o]therwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hinojosa v. Livingston*, 807 F.3d 657, 672 (5th Cir. 2015).

As the Fifth Circuit has explained, "[a] plaintiff seeking to overcome" a defense of immunity to suit "must plead specific facts that . . . allow the court to draw the reasonable inference that . . . defeat[s]" the defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Only "[a]fter the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,'" may the Court issue a "narrowly tailored" discovery order. *Id.; see Wicks v. Miss. State Emp't Svcs.*, 41 F.3d 991, 994 (5th Cir. 1995) ("Discovery . . . must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."). But the Court is mindful that, "in the arena of qualified immunity . . . discovery is not the place to determine if one's speculations might actually be well-founded." *Floyd v. City of Kenner, La.*, 351 Fed. App'x. 890, 898 (5th Cir. 2009) (per curiam) (unpublished). Instead, discovery is only available when "the pleadings . . . have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation." *Id*.

In cases involving assertions of qualified immunity, courts have often found it appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id*.

### E.  *"Monell"* Liability under § 1983

An entity such as a school district may be held liable under § 1983 only when the entity itself causes a constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). This requires an official policy or custom that results in the injury made the basis of the § 1983 claim. *Monell*, 98 S.Ct. at 2035–36. Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

In this context, an "official policy" may be (1) a policy statement, ordinance, or regulation, or (2) "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)); *see also Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010). "The description of a policy or custom

and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). "It follows that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional." *Piotrowski*, 237 F.3d at 579–80. A municipality's policy of inaction despite awareness—constructive or actual—that its policy will cause a constitutional violation may sometimes be "'the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

In this context, a plaintiff must point to more than the actions of municipal employees, he must also normally "identify a policymaker with final policymaking authority." *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003); *see also Piotrowski*, 237 F.3d at 578 ("[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."). In determining whether the plaintiff has properly identified a policymaker, the "court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id*. at 248.  For a Texas school district to be liable for acts taken pursuant to an alleged custom, "[a]ctual or constructive knowledge of such custom" must be fairly attributable to the district's Board of Trustees. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also Rivera v. Houston Indep. School Dist*., 349 F.3d 244, 247–48 (5th Cir. 2003) (under Texas law, the Board of

Trustees, not the Board in combination with any subordinate school district officials is the "official policymaker" for purposes of § 1983 liability).

Further, such a custom must be shown through allegations of "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Zarnow*, 614 F.3d at 168-69.  Such a pattern of conduct requires "similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. . .. A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009); *see also Okon v. Harris County Hosp. Dist*., 426 Fed. App'x. 312, 316 (5th Cir. 2011) ("The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom."). The plaintiff must also allege that the policy at issue was the "moving force," or in other words, the "direct causal link" between the action and the deprivation of constitutional rights. *Piotrowski*, 237 F.3d at 579–80.

## ANALYSIS

### A.  AISD's Motion to Dismiss

AISD first argues that Saldana's claims against it should be dismissed because her claims are insufficient under *Monell*.  The Court agrees.  Saldana has not alleged any facts that would allow this Court to "draw the reasonable inference that the defendant is

liable for the misconduct alleged."  AISD's motion to dismiss Saldana's claims against it is **GRANTED**.

There is no doubt that the allegations in this case are disturbing.  However, as discussed below, the Court finds that many of Saldana's allegations do not rise to the level of violations of the minor's constitutional rights. Further, Saldana's allegations do not sufficiently set out an a policy or custom by AISD. Her pleading wholly fails to mention the policymaker at issue—the AISD Board. Even though she alleges that "AISD" had "actual knowledge" of Hernandez's first assault on her child, Saldana does not explain how AISD may have gained knowledge, or when. Saldana's allegations that AISD failed to investigate the assaults, and failed to train, supervise, or discipline its employees are similarly conclusory, and she similarly fails to allege any facts capable of proving a pattern of prior incidents. *See Sanders–Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010); *compare, e.g.,  Fennell v. Marion Ind. Sch. Dist.*, 963 F. Supp. 2d 623, 644–46 (W.D. Tex. 2013) (use of racial slurs over a number of years and three incidents involving animation of a noose or an actual noose were severe and pervasive). Further, Saldana has failed to allege facts suggesting that the need for more training, supervision, or discipline was "obvious and obviously likely to result in a constitutional violation" as required to support liability here.

Accordingly, the Court finds that AISD's Motion to Dismiss (Dkt. 17) should be **GRANTED.**

**B. Hernandez's Motion to Dismiss**

Next, the Court turns to Saldana's claims against Hernandez. Saldana does not clarify whether she is suing Hernandez in her individual or official capacity, or both. To the extent that Saldana is asserting a claim against Hernandez in her official capacity, the real party in interest in those claims is the governmental entity (AISD)—not Hernandez, and those claims are subject to the Court's analysis above. *See, e.g., Hafer v. Melo*, 502 U.S. 21, 25 (1991) (claims against a government official in his or her official capacity are asserted against the governmental entity, not the individual).

Thus, the Court now turns to claims asserted against Hernandez in her individual capacity. Hernandez has moved to dismiss Saldana's claims on the grounds of qualified immunity, as well as because (1) Saldana's claims for denial of substantive due process are barred because Texas law affords adequate remedies for claims regarding corporal punishment; and (2) Saldana's claims for denial of equal protection fail to allege that Hernandez discriminated against the minor because of his disability, and because Hernandez argues her actions were nothing more than corporal punishment that should be evaluated under a rational basis standard.

**1. Equal Protection Claim**

As noted above, Saldana has alleged two different types of constitutional violations. The Court first addresses the alleged equal protection violation. Other than pleading that "there is no question that the minor Plaintiff, a non-verbal autistic child, suffers from significant disabilities and he was singled out on his bus for abuse precisely because of his limitations," Saldana does not explain how her minor child was treated

differently than similarly situated children, nor does she allege that he was improperly classified or discriminated against because of his disability. To prevail on an equal protection claim, plaintiffs must show that they were intentionally treated differently from other students similarly situated and, because no fundamental right is involved, that there is no rational basis for that difference in their treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000); *Cunningham v. Beavers*, 858 F.2d 269, 272–73 (5th Cir. 1988) (stating that "[t]he Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike"). Saldana's pleadings on this point are insufficient.

### 2.  Liberty Interest Claim

Next, the Court turns to the alleged violation of the minor's liberty interest under the Fourteenth Amendment.  The Fifth Circuit has held that school children have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment, and that abuse by a school employee may violate that right. *Doe v. Taylor I.S.D.*, 15 F.3d 443, 451–52 (1994), *cert. denied*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994) (analyzing sexual abuse of a student by a teacher, on school premises).  On the other hand, the Fifth Circuit has held consistently that, "as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990); *Fee v. Herndon*, 900 F.2d

804, 807 (5th Cir. 1990) (describing "corporal punishment" as a "deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning[,]" but holding that "[e]ducators in states that proscribe student mistreatment and provide a remedy 'do not, by definition, act "arbitrarily," a necessary predicate for substantive due process relief'"); *see also Serafin v. School of Excellence in Educ.*, 252 Fed. App'x. 684, 685–686 (5th Cir. 2007) (reiterating that "[i]t is well settled in this Circuit that corporal punishment of public school students is only a deprivation of substantive due process rights 'when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning[,]'" and that "[a]s a matter of law, punishment is not arbitrary so long as the state affords local remedies for the alleged offensive conduct") (citing *Fee* and *Moore* ); *Flores v. School Board of DeSoto Parish,* 116 Fed. App'x. 504, 509 (5th Cir. 2004) (stating that "[t]his circuit does not permit public school students to bring claims for excessive corporal punishment as substantive due process violations under § 1983 if the State provides an adequate remedy"); *Marquez v. Garnett*, 567 Fed. Appx. 214, 217 (5th Cir. 2014) (where teacher was alleged to "cursed and yelled" at severely autistic, non-verbal, physically disabled student, and to have "grabbed him from behind in a forceful and frightening manner, shoved him to the side and repeatedly kicked [him]" because he "was sliding [teacher's] compact disc across a table during class time, nonetheless finding that "the setting is pedagogical, and [the student's] action was unwarranted [thus] the inference must be that Garnett acted to discipline C.M., even if she may have overreacted.").

Thus, a threshold question here is whether Hernandez's alleged actions constitute "corporal punishment." *Id.* at 510. ("whether the magistrate judge was correct in treating Wysinger's behavior as corporal punishment rather than as a malicious and unprovoked attack is an important issue."). "[F]airly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose." *Flores*, 116 Fed. App'x. at 511 (noting that plaintiff specifically pled teacher's actions were done "maliciously and sadistically in order to cause harm . . . and not for the purposes of restoring order or maintaining discipline" but other allegations stated student was tardy in returning to detention, and that teacher believed that student was purposefully delaying).   Unlike in *Flores*, or *Marquez*, there are no allegations of facts at this point to support an inference that Hernandez's actions were "corporal punishment," or that the minor's actions, if any, were "unwarranted."  All that Saldana alleges is that a disabled, non-verbal minor was struck by Hernandez on two occasions—once with a rolled-up folder, and later, repeatedly, with a seatbelt buckle.

Even if the Court finds that Saldana's allegations against Hernandez describe more of a "random, malicious, and unprovoked attack" than "corporal punishment,"  *id.* at 511, Saldana must still further plead acts that are more than an ordinary tort—she must plead facts that "shock the conscience." *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012) (noting, "[m]any cases that have applied the standard have involved the use of extreme force by police officers or other state actors," and "[t]he burden to show state conduct that shocks the conscience is extremely high,

requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme.") (internal citations omitted); *see also M.C. ex rel. Thurman v. Dorsey,* 909 F. Supp. 2d 568, 575 (S.D. Miss. 2012) (finding coach's administering "licks" to high school basketball players, "even repeatedly and even using a weightlifting belt rather than a paddle, as a coaching technique simply does not meet the extremely high standard required to state a claim for a substantive due process violation."); *but see Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1075–76 (11th Cir. 2000) (student blinded in one of his eyes when a coach intentionally hit him in the head with a metal weight held to have pled a claim for deprivation of substantive due process).

Under the standards set out above, the Court finds that the first alleged incident, in which Hernandez is alleged to have "hit[] the minor disabled Plaintiff with a rolled-up folder," does not plead sufficient facts to raise the inference that Hernandez committed a substantive due process violation.   Further, the Court finds that Saldana's pleadings regarding this incident fail to overcome Hernandez's assertion of qualified immunity.

The Court next turns to the second incident, in which Hernandez is alleged to have "swung a seat belt at the minor disabled Plaintiff, striking him forcefully with a seat belt buckle three times in less than five minutes, each blow terrifying the minor [autistic, non-verbal] disabled Plaintiff and causing him physical and mental pain and suffering and mental anguish."  This is a substantively different type of allegation, and the Court finds that further pleading here is warranted under *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995), to determine whether Saldana can allege specific facts that, if true, would be

sufficient to: (1) demonstrate liability, *i.e.*, that Hernandez's actions violated the minor's liberty interest in bodily integrity under the Fourteenth Amendment; and (2) to overcome qualified immunity, *i.e.*, that Hernandez's actions were objectively unreasonable in light of the clearly established law at the time.

**CONCLUSION**

For the reasons stated above, AISD's motion to dismiss is **GRANTED**.

Further, the Court **GRANTS** Hernandez's motion to dismiss, in part.  The Court **GRANTS** the motion to dismiss Saldana's causes of action regarding the equal protection claims, and it further **GRANTS** Hernandez's motion to dismiss Saldana's liberty interest claims that relate to the first alleged incident with the folder.

The Court **ORDERS** Saldana to file a Rule 7(a) Reply setting out more specific factual allegations that are directed to Hernandez's assertion of qualified immunity regarding Saldana's claim that Hernandez's act of striking the minor with a bus seat belt violated the minor's liberty interest under the Fourteenth Amendment.  **Such reply shall be filed within 10 days of the issuance of this Order.**

Pending the filing of the Plaintiff's Reply, the remaining portion of Hernandez's motion to dismiss is taken under advisement.

SIGNED at Galveston, Texas, this 27th day of February, 2017.

George C. Hanks Jr.
United States District Judge